FILED

August 17, 2009

CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0002028938

NICK I. IEZZA, State Bar No. 128570
SARA VENTEICHER, State Bar No. 221508
SPIWAK & IEZZA, LLP
555 Marin Street, Suite 140
Thousand Oaks, CA 91360
(805) 777-1175 telephone
(805) 777-1168 facsimile
Refer to File No. 314.893
Attorneys for Movant,
FINANCIAL PACIFIC LEASING, LLC

# IN THE UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### (Sacramento Division)

| | |
|---|---|
| IN RE: | CASE NO. 09-23892 |
| TIMOTHY JOSEPH SCHMIDT AND JANET LOUISE RUSTICI, | DC No. SV2 |
| Debtors. | CHAPTER 7 |
| [Chapter 7 Trustee: John W. Reger] | **STIPULATION BETWEEN FINANCIAL PACIFIC LEASING LLC AND DEBTOR RE RELIEF FROM STAY** |

**IT IS HEREBY STIPULATED BY AND BETWEEN** the attorneys of record for Creditor, FINANCIAL PACIFIC LEASING, LLC, and Debtors, TIMOTHY JOSEPH SCHMIDT AND JANET LOUISE RUSTICI, as follows:

1.     FINANCIAL PACIFIC LEASING, LLC ("Creditor") is the owner of a written Lease Agreement ("Agreement") pursuant to which TIMOTHY JOSEPH SCHMIDT dba XTREME STRUCTURES, INC., ("Debtor") leased the therein described Leased Equipment (as set forth in the two Equipment Lists attached hereto, and incorporated herein by reference) from Innovative Lease Services, Inc., and agreed to perform all of the terms and conditions thereof, including the timely payment of all amounts falling due thereunder. Innovative Lease Services, Inc. assigned its rights pursuant to the Agreement to Creditor. True and exact copies of said Agreement and Assignment with the related attachments including the two Equipment Lists are attached hereto as "Exhibit 1" and by this reference incorporated herein as though set forth in full.

Spiwak & Iezza, LLP
555 Marin Street
Suite 140
Thousand Oaks, CA 91360
(805) 777-1175

1    2.    WHEREAS, it is provided by the terms of said Agreement that upon any
2    default thereunder Creditor may take and have immediate possession of said Leased
3    Equipment, as listed in the two Equipment Lists included in Exhibit 1 hereto.

4    3.    WHEREAS Debtor defaulted on the payments due to Creditor as of January
5    1, 2009, prior to the filing of this bankruptcy case.

6    4.    Since about January 1, 2009, Creditor has received no payments on this
7    account. Accordingly, the total delinquency from January 1, 2009, to this date equals
8    $78,602.54, which includes $1,176.25 in late fees, and $968.91 in taxes, as well as the
9    unpaid monthly Agreement payments.

10    5.    WHEREAS on March 6, 2009, Debtor filed the above-captioned Bankruptcy
11    case under chapter 7.

12    6.    There have been no payments made to Creditor since the filing of the
13    within bankruptcy petition.

14    7.    WHEREAS the Debtors have not been discharged.

15    8.    Pursuant to the Agreement, the Leased Equipment is, and at all times shall
16    remain, the sole and exclusive personal property of Creditor.

17    9.    Repossession and Sale of the properties may not now go forward because
18    of the benefits of the Automatic Stay of 11 U.S.C., Section 362(a).

19    ///
20    ///
21    ///
22    ///
23    ///
24    ///
25    ///
26    ///
27    ///
28    ///

1    10.    Wherefore, the parties agreed to allow Creditor Relief from Automatic

2  Stay in order to repossess and sell or lease or otherwise dispose of the Leased Equipment

3  described on the attached Exhibit 1 in accordance with the applicable state law.

4    11.    A facsimile copy of this Stipulation may be used as though it is an original.

5

6  Dated: August _4_, 2009          SPIWAK & IEZZA, LLP

7

8                                   By: _____
                                    Sara Venteicher,

9                                   Attorneys for Creditor, Financial Pacific
                                    Leasing LLC

10                                  JACOBS & ANDERSON

11      _July 30_

12  Dated: ~~August~~ ____, 2009    By: _____
                                    Douglas B. Jacobs,

13                                  Attorneys for Debtor, ~~Stephanie J. Hansen~~
                                    ~~and Marc S. Lane~~  _Timothy Schmile_

14

15

16  **THE CHAPTER 7 TRUSTEE DOES NOT OPPOSE THIS STIPULATION.**

17

18

19  Dated: August _0_, 2009         By: _____
                                    John W. Reger, Chapter 7 Trustee

20

21

22  **IT IS SO ORDERED.**

23

24

25  Dated: August ____, 2009        _____
                                    JUDGE, UNITED STATES BANKRUPTCY
                                    COURT

26

27

28

# Exhibit 1

Exhibit 1

# LEASE AGREEMENT

LEASE #: 495476.001

| | |
|---|---|
| **LESSEE** | |

**XTREMESTRUCTURES, INC.**

Billing Address - 4801 Feather River Boulevard Suite 17    Oroville CA 95965        County: Butte

**VENDOR/SUPPLIER**

'see equipment list'

**EQUIPMENT DESCRIPTION.** Attach separate Addendum if needed.

| Quantity | Type, Make, Model & Serial Number | |
|---|---|---|
| 1 | SEE ATTACHED EQUIPMENT LIST | This document is subject to a security interest in favor of Bank of America, as Administrative Agent for the Lenders. |

**EQUIPMENT LOCATION.** Complete only if equipment will not be located at Lessee's address above.

Address    SAME                                             County:

**SCHEDULE OF LEASE PAYMENTS**

| Lease Term (Months) | Number of Payments | Amount of Each Lease Payment | | | x | Number of Prepayment(s) | + | Administrative Fee | + | Security Deposit | = | Initial Amount Due |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Rental | Tax | Total Payment | | | | | | | | |
| 60 | 60 | $2,152.27 | INCLUDED | $2,152.27 | | 2 | | $557.70 | | $0.00 | | $4,862.24 |

Payment Due Date      Interim Rent will be billed and calculated as follows: (Monthly Rental Payment divided by 30 days = Daily Rate) x (# of Days Between

X 1st ☐ 15th    5/1/07          Acceptance Date And First Payment Date) = Total Interim Rental

THIS LEASE IS SUBJECT TO THE TERMS AND CONDITIONS PRINTED HEREON **AND ON THE FOLLOWING PAGES,** ALL OF WHICH ARE MADE A PART HEREOF AND WHICH LESSEE ACKNOWLEDGES HAVING READ. PLEASE READ CAREFULLY BEFORE SIGNING.

**THIS LEASE AGREEMENT, WHICH CONSISTS OF 4 PAGES, IS NOT BINDING UNTIL ACCEPTED BY LESSOR**

*LESSEE:* XTREMESTRUCTURES, INC.

X _____
TIMOTHY J. SCHMIDT    President & Individually

(Date)    04/17/07

*LESSOR:* INNOVATIVE LEASE SERVICES, INC.

By _____
(Signature Only)

(Title)    President

## THIS IS A NON-CANCELABLE LEASE FOR THE TERM INDICATED

Lessor, hereby Leases to the Lessee, and Lessee hereby hires and takes from Lessor all property described in this agreement or hereafter and made a part hereof.

1. **ENTIRE AGREEMENT.** This Lease constitutes the entire agreement between Lessor and Lessee. No oral agreement, guaranty, promise, condition, representation or warranty shall be binding on Lessor. All prior conversations, agreements or representations related hereto and/or to said equipment are integrated herein. No modification hereof shall be binding unless in writing and signed by Lessor.

2. **REPRESENTATIONS.** Lessee acknowledges that no salesman or agent of the supplier of the equipment is authorized to waive or alter any term or condition of this Lease and no representation as to the equipment or any matter by the supplier shall in any way effect the Lessee's duty to pay the Lease payments and perform its other obligations as set forth in this Lease.

3. **STATUTORY FINANCE LEASE.** Lessee agrees and acknowledges that it is the intent of both parties to this Lease that it qualify as a statutory finance Lease under Article 2A of the Uniform Commercial Code. Lessee acknowledges and agrees that Lessee has selected both: (1) the equipment; and (2) the supplier from whom Lessor is to purchase the equipment. Lessee acknowledges that Lessor has not participated in any way in Lessee's selection of the equipment or of the supplier, and Lessor has not selected, manufactured, or supplied the equipment.

LESSEE IS ADVISED THAT IT MAY HAVE RIGHTS UNDER THE CONTRACT EVIDENCING THE LESSOR'S PURCHASE OF THE EQUIPMENT FROM THE SUPPLIER CHOSEN BY LESSEE AND THAT LESSEE SHOULD CONTACT THE EQUIPMENT SUPPLIER FOR A DESCRIPTION OF ANY SUCH RIGHTS.

4. **ASSIGNMENT BY LESSEE PROHIBITED WITHOUT LESSOR'S PRIOR WRITTEN CONSENT.** LESSEE SHALL NOT ASSIGN THIS LEASE OR ANY INTEREST THEREIN, OR SUBLEASE THE EQUIPMENT, OR PLEDGE OR TRANSFER THIS LEASE, OR OTHERWISE DISPOSE OF THE EQUIPMENT COVERED HEREBY.

5. **APPLICABLE LAW AND VENUE.** ALL MATTERS INVOLVING THE CONSTRUCTION, VALIDITY, PERFORMANCE, OR ENFORCEMENT OF THIS LEASE SHALL BE GOVERNED BY THE LAWS OF THE STATE OF WASHINGTON. LESSEE CONSENTS TO THE PERSONAL JURISDICTION OF THE COURTS OF THE STATE OF WASHINGTON AND AGREES THAT VENUE AND JURISDICTION VENUE IN ANY DISPUTE, SUIT OR ACTION ARISING UNDER OR IN RELATION TO THE LEASE, AND ALL DOCUMENTS EXECUTED IN CONNECTION THEREWITH, SHALL BE IN KING COUNTY, STATE OF WASHINGTON. LESSOR SHALL HAVE THE OPTION OF COMMENCING AN ACTION IN ANY COURT HAVING JURISDICTION OVER THE SUBJECT MATTER AND PARTIES TO THE TRANSACTION.

6. **NO WARRANTY.** Lessee has selected both equipment and the supplier thereof. Lessor, not being the manufacturer of the equipment, nor manufacturer's agent, MAKES NO WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, AS TO THE FITNESS FOR A PARTICULAR USE OR OTHERWISE, QUALITY, DESIGN, CONDITION, CAPACITY, SUITABILITY, MERCHANTABILITY OR PERFORMANCE OF THE EQUIPMENT OR OF THE MATERIAL OR WORKMANSHIP THEREOF, IT BEING AGREED THAT THE EQUIPMENT IS LEASED "AS IS" AND THAT ALL SUCH RISKS, AS BETWEEN THE LESSOR AND THE LESSEE, ARE TO BE BORNE BY THE LESSEE AT ITS SOLE RISK AND EXPENSE. Lessee accordingly agrees not to assert any claim whatsoever against the Lessor based thereon. In addition, Lessee waives any and all rights and remedies conferred by UCC 2A-508 through 2A-522, including, but not limited to, the Lessee's right to (a) cancel or repudiate the lease; (b) reject or revoke acceptance of the Leased property; (c) deduct from rental payments all or any part of any claimed damages resulting from the Lessor's default under the Lease; (d) recover from the Lessor any general, special, incidental, or consequential damages, for any reason whatsoever. Lessee further waives any and all rights, now or hereafter conferred by statute or otherwise, that may require the Lessee to sell, re-lease, or otherwise use or dispose of the Leased property in mitigation of the Lessor's damages or that may otherwise limit or modify any of the Lessor's rights or remedies hereunder.

7. **TERM.** The initial term of this lease is set forth on the first page of this lease agreement. The term begins upon which of the following dates is earlier: (a) the date Lessee requests Lessor to make payment to the Supplier; or (b) the Acceptance Date as indicated on the Inspection/Verification Certificate.

8. **LEASE PAYMENT-SECURITY DEPOSIT.** The lease payments for the equipment leased shall be in the amount designated in the schedule of payments and shall commence on the indicated payment due date immediately following the equipment acceptance date. Lessee shall pay Lessor said lease payments on or before the due date and at the office of Lessor or to such other person or place as Lessor may designate in writing. Lessee agrees to pay pro rata rental (based on the monthly lease payments) for the period from the Acceptance Date, indicated on the Inspection/Verification Certificate, to the due date of the first payment. Said pro rata rental shall be in addition to the first payment and shall be made simultaneously with the first payment. Prepayments are credited with one payment being applied to the first month's rental and any other prepayment(s) are applied to the last month(s) rental(s). The security deposit as designated in the Lease shall remain as security for performance of the terms and conditions of the Lease and shall remain with the Lessor until termination of the Lease, absent breach of any terms of the Lease by Lessee unless otherwise agreed to in writing by both parties.

9. **LATE CHARGES AND COLLECTION CHARGES.** A late charge of 10% of the total monthly lease payment, or $10, whichever is greater, will be assessed when a payment is not received on or before the due date. An additional late charge will be assessed for each month a payment remains unpaid. If Lessee's delinquency requires additional collection efforts, a charge will be assessed in accordance with Lessor's collection charge schedule. In addition, Lessee shall be assessed for any charges levied by an outside collection agency following Lessee's default.

10. **LOCATION AND USE OF EQUIPMENT.** Lessee shall keep the equipment at the location designated in the Lease, unless Lessor in writing permits its removal. Said equipment shall be used solely in the conduct of Lessee's business and Lessee warrants that property leased is for commercial or business purposes and not for consumer, personal, home or family purposes.

11. **ARBITRATION.** Any controversy or claim arising out of this lease or the breach thereof may at the option of the Lessor be settled by arbitration in accordance with the LAWS OF THE STATE OF WASHINGTON and judgment upon the award rendered by the arbiter(s) may be entered in any court having jurisdiction thereof. Arbitration shall be held in the City of Federal Way, State of Washington.

12. **SURRENDER OF EQUIPMENT.** At the expiration of this lease, or upon demand by Lessor pursuant to Paragraph 19 of this lease, Lessee at its expense shall return the equipment in proper working order, condition and repair by delivering it packed and ready for shipment to such place or on board such carrier as Lessor may specify. WARNING: FAILURE TO PROMPTLY RETURN THE LEASED PROPERTY MAY RESULT IN CRIMINAL PROSECUTION AND/OR ADDITIONAL RENTAL CHARGES, ON A MONTH TO MONTH BASIS, UNTIL THE EQUIPMENT IS RECOVERED BY THE LESSOR.

13. **NOTICES.** Services of all notices under this agreement shall be sufficient if given personally or mailed to Lessor at 3455 S. 344th Way, Federal Way, WA 98001, P.O. Box 4568, Federal Way, WA 98063, or to Lessee at Lessee's last known address or at such other address as a party may provide in writing from time to time. Any such notice mailed to such address shall be effective when deposited in the United States mail duly addressed and postage prepaid.

14. **LIABILITY AND INDEMNITY-LOSS AND DAMAGE.** Lessee shall indemnify and hold Lessor harmless from any and all injury to or loss of the equipment from whatever cause, and from all liability arising out of the manufacture, selection, operation, use, maintenance, or delivery thereof, including attorney's fees. In the event of loss or damage of any kind whatsoever to the equipment, or to any part thereof, Lessee, at the option of the Lessor, shall (a) Replace the same in good condition, repair and working order; or (b) Replace the same, with like property of the same or greater value: provided, however, at Lessee's option, the remaining obligation of the lease can be satisfied by the payment of the remaining unpaid lease payments and the estimated value of the equipment at the expiration of the lease, and other amounts due under the lease, less the net amount of the recovery, if any, actually received by the Lessor from insurance or otherwise for such loss or damage. Lessor shall not be obligated to undertake by litigation or otherwise the collection of any claim against any person for loss or damage of the equipment. Except as expressly provided in this paragraph, total or partial destruction of any equipment or total or partial loss of use or possession thereof to Lessee shall not release or relieve Lessee from the duty to pay the lease payments herein provided.

15. **INSURANCE.** Lessee, at its own expense, shall keep said equipment insured for the full term of this lease and any renewals or extensions thereof, for the full insurable value thereof against all risks of loss or damage, and against such other risks in such amounts as Lessor may specify, including liability insurance, with limits not less than $500,000 (bodily injury and property damage) combined single limit. Provided, however, in those instances where Lessee is leasing equipment defined by Lessor as "mobile equipment," Lessee shall procure and maintain, for the full lease term, all risk physical damage insurance as opposed to insurance against fire and theft, with extended or combined coverage. All insurance policies must provide that no cancellation shall be effective without thirty (30) days' prior written notice to Lessor. Lessee shall deliver to Lessor the policies or evidence of insurance with a standard form of endorsement attached thereto showing Lessor to be named as an additional insured, together with receipts for the premiums thereunder. Lessee shall, at the request of Lessor, name as Loss Payee such party who may have a security interest in the equipment.

16. **LESSEE'S FAILURE TO PAY TAXES, INSURANCE, ETC.** Should Lessee fail to make any payment or do any act as herein provided, then Lessor shall have the right, but not the obligation, without notice to or demand upon Lessee, and without releasing Lessee from any obligation hereunder, to make or do the same and to pay, purchase, contest, or compromise any encumbrance, charge or lien which in the judgment of Lessor appears to affect the equipment, and in exercising such rights, incur any liability and expend whatever amounts in its absolute discretion it may deem necessary therefore. Should Lessee fail to provide Lessor the policies or evidence of insurance described herein, Lessee shall be assessed as to Lessor's purchase of insurance and also agrees that a charge therefore will be paid by the Lessee. All sums so incurred or expended by Lessor shall be without demand immediately due and payable by Lessee and shall bear interest at eighteen Percent (18%) per annum if not prohibited by law, otherwise at the highest lawful contract rate.

17. **OWNERSHIP.** The equipment is and shall be at all times the sole and exclusive property of Lessor. This lease and the equipment described herein may be subject to a preexisting security agreement in favor of a bank or another financial institution.

18. **AUTHORITY TO SIGN.** If Lessee is a partnership or corporation, the person signing the Lease on behalf of such partnership or corporation hereby warrants that (s)he has full authority from the partnership or corporation to sign this lease and obligate the partnership or corporation.

19. **DEFAULT REMEDIES.**
a) An event of default shall occur if:
(1) Lessee fails to pay any Lease installment and such failure continues for a period of ten (10) days;
(2) Lessee shall fail to perform or observe any convenant, condition or obligation to be performed or observed by it hereunder and such failure continues uncured for fifteen (15) days;

(3) Lessee becomes insolvent or makes an assignment for the benefit of creditors;

(4) Lessee applies for or consents to the appointment of a receiver, trustee or liquidator of Lessee, or of all or a substantial part of the assets of Lessee, or if such receiver, trustee or liquidator is appointed without the application or consent of Lessee, or to the extent permitted by law, if a petition is filed by or against the Lessee under the bankruptcy act, or any amendment thereto (including without limitation a petition for reorganization, arrangement or extension) or under any other insolvency law or law providing for relief of debtors;

(5) Lessee attempts to remove, sell, transfer, encumber, part with possession or sublet the equipment or any item thereof. Lessee agrees it will not replace or substitute the equipment described herein for any reason whatsoever without first obtaining Lessor's consent. Failure to obtain Lessor's consent will constitute a default on part of the Lessee. Further, the term "equipment" shall include any and all replacement or substituted equipment, whether or not such replacement or substitution occurred with Lessor's consent.

b) Upon the occurrence of an event of default, Lessor shall have the right to exercise any one or more of the following remedies:

(1) To declare the entire unpaid lease payments and other sums payable by Lessee hereunder to be immediately due and payable;

(2) Cause Lessee, at Lessee's expense, promptly to return any or all of the equipment to Lessor, all without demand or legal process, and to allow Lessor to enter into the premises where the equipment may be found and take possession of or remove the same, whereupon all rights of the Lessee in the equipment shall terminate absolutely; and

(i) Retain the equipment and all lease payments made hereunder, or

(ii) Retain all prior lease payments and sell the equipment at public or private sale, with or without notice to Lessee. The sale price, less 10% to cover Lessor's internal costs, will be credited against the remaining unpaid lease payments, unpaid late charges, estimated value of equipment at the expiration of the lease, charges for retaking, storage, repairing and reselling the equipment, reasonable attorney's fees incurred by the Lessor and other amounts due under the lease in such order as the Lessor in its sole discretion shall determine. The Lessee shall remain liable for the deficiency and any surplus remaining after such application of proceeds of sale shall be paid to the Lessee, or to whosoever may be lawfully entitled to receive the same; or

(iii) Retain the equipment and all prior payments, with the Lessee remaining liable for the unpaid lease payments, unpaid late charges, charges for retaking and restoring equipment to proper order and working condition, reasonable attorney's fees incurred by Lessor, together with other amounts due under the Lease; or

(iv) Lease the equipment, or any portion thereof, for such period, rental, and to such persons as Lessor shall select, and credit Lessee with an amount equal to Lessor's capital cost of this new lease, less ten percent (10%) after declaring all costs and expenses incurred in connection with the recovery, repair, storage and leasing of the equipment in payment of the lease and other obligations due from Lessee to Lessor hereunder, Lessee remaining responsible for any deficiency. It is agreed that the amounts to be retained by the Lessor and the balance to be paid by the Lessee under this paragraph (2) shall not be a penalty but shall be as and for liquidated damages for the breach of this lease and as reasonable return for the use of the equipment and for the depreciation thereof.

(3) Lessor may pursue any other remedy at law or in equity.

(4) No remedy herein conferred upon or reserved to Lessor is intended to be exclusive of any other remedy herein or by law provided, but shall be cumulative and in addition to every other remedy available to Lessor.

20. **ATTORNEY'S FEES AND EXPENSE.** In the event the Lessor is required to retain an attorney to assist in the enforcement of its rights under this lease agreement, it shall be entitled to a reasonable attorney's fee, however incurred, in addition to costs and necessary disbursements, whether or not suit becomes necessary, including fees incurred on appeal or in connection with a bankruptcy proceeding.

21. **MAINTENANCE AND REPAIR.** Lessor shall not be obligated to install, erect, test, adjust, service or make repairs or replacements to the equipment. Lessee shall not incur for Lessor's account or liability any expense therefore without Lessor's prior written consent. Lessee shall bear the expense of all necessary repairs, maintenance, operation, and replacements required to be made to maintain the equipment in proper working condition, reasonable wear and tear excepted.

22. **OPERATION OF EQUIPMENT.** Lessee shall cause the equipment to be operated by competent employees only, and shall pay all expenses of operation. Lessee shall comply with all laws and regulations relating to ownership, possession, operation, use and maintenance of the equipment. Lessee shall hold Lessor harmless from any and all actual or asserted violations of the aforesaid covenant.

23. **TAXES.** Lessee shall pay and discharge all sales, use, property and other tax or taxes now or hereafter imposed by any state, federal or local government upon government upon the equipment based upon the ownership, leasing, renting, sale, possession or use thereof, whether the same be assessed to Lessor or Lessee, together with any penalties or interest in connection therewith, and will, from time to time, on request of Lessor, submit written evidence of the payment of all the governmental obligations mentioned in this paragraph. The Lessor will, on any property tax returns required to be filed by it, include the property covered by this lease or any substitution or additions thereto as property in the possession of Lessee for purposes of tax assessments. Upon termination of this Lease, Lessor will collect personal property taxes for every year assessed by the taxing jurisdictions, but unpaid as of the termination. The amount collected will be estimated by multiplying 1.5% of the taxes of the initial cost of the equipment by the number of years assessed. In the event that the actual personal property tax bill is within $500 of such estimate, then the Lessor shall not seek reimbursement from the Lessee for any underpayment, and Lessor may retain any overpayment. If the difference between such estimate and the actual tax bill exceeds $500, Lessor shall refund or Lessee shall remit the entire difference.

24. **LESSOR'S ASSIGNMENT.** Lessor may assign the lease payments reserved herein or all or any of Lessor's other rights hereunder. After such assignment, Lessee waives any right Lessee may have to claim or assert any defenses, setoffs or counterclaims against assignee of the Lessor. Lessee will settle all claims arising out of alleged breach of warranties, defenses, setoffs and counterclaims it may have against Lessor directly with Lessor and not set up any such against Lessor's assignee. An assignee of Lessor shall not be obligated to perform any of Lessor's obligations under this lease. Lessee, on receiving notice of any such assignment, shall abide thereby and make payment as may therein be directed. Following such assignment, solely for the purpose of determining assignee's rights hereunder, the term Lessor shall be deemed to include or refer to Lessor's assignee. Lessee acknowledges that the equipment may be subject to a security interest which is prior to Lessee's interest in the equipment.

25. **PERSONAL PROPERTY.** The equipment is, and shall at all times be and remain, personal property notwithstanding that the equipment or any part thereof may now be, or hereafter become, in any manner affixed or attached to, or imbedded in, or permanently resting upon, real property or any building thereon, or attached in any manner to what is permanent as by means of cement, plaster, nails, bolts, screws or otherwise. Lessee shall obtain the necessary permission from the owner of any real property where the equipment is to be affixed to the realty or be deemed a fixture in order that said leased property shall at all times be severable and removable therefrom by the Lessor, free of any right, title, claim or interest of the property owner and of the Lessee except as herein provided. The equipment shall at all times remain the property of Lessor.

26. **LESSOR'S ENCUMBRANCE.** In the event Lessor defaults in the payment of any sum to be paid pursuant to any conditional sales contract, chattel mortgage mortgage or purchase money security agreement, Lessee may pay the lease payment to the holder of said encumbrance after notice of default, and to the extent thereof such payment shall constitute payment of the lease payment to Lessor.

27. **FINANCIAL STATEMENTS.** The Lessor may require from time to time, and Lessee agrees to furnish, statements setting forth the current financial condition and operations of Lessee.

28. **MISCELLANEOUS.** Lessee will not change or remove any insignia or lettering on the equipment and shall conspicuously identify each item of the leased equipment by suitable lettering thereto to indicate Lessor's ownership. All transportation charges shall be borne by Lessee. Lessee waives all rights under all exemption laws. Lessee admits the receipt of a true copy of this lease. This lease is irrevocable for the full term hereof and for the aggregate lease payments herein reserved, and the lease payments shall not abate by reason of termination of Lessee's right of possession and/or the taking of possession by Lessor or for any other reason. Delinquent lease installments and other sums due under this lease shall bear interest at eighteen percent (18%) per annum if not prohibited by law, otherwise at the highest lawful contract rate. Lessee gives Lessor permission to give credit reporting agencies, creditors and potential creditors information relating to any credit Lessor may grant Lessee. Lessor, at its option, may utilize this lease as a UCC financing statement for filing purposes. Lessee grants to Lessor a specific power of attorney for Lessor to use to sign and file on Lessee's behalf any document Lessor deems necessary to perfect or protect Lessor's interest in the equipment or pursuant to the Uniform Commercial Code. If Lessor is required by law to discount any unpaid lease payment or other sums payable by Lessee hereunder, then the parties hereto agree that the discount rate used shall be five percent (5%) annually. If any provision of this Lease is held to be contrary to law, such provision shall be disregarded and the remainder of this agreement shall be enforceable according to its terms.

# GUARANTEE

To induce Lessor to enter into a Lease with XTREMESTRUCTURES, INC. ("Lessee"), the undersigned Guarantor unconditionally guarantees to Lessor the prompt payment when due of all Lessee's obligations to Lessor under the lease. Lessor shall not be required to proceed against the Lessee or the equipment or enforce any other remedy before proceeding against the undersigned. The undersigned waives notice of acceptance hereof and all other notices or demand of any kind to which the undersigned may be entitled. The undersigned consents to any extensions or modifications granted to Lessee and the release and/or compromise of any obligations of Lessee or any other obligors and guarantors without notice and without in any way releasing the undersigned from his or her obligations hereunder. Guarantor waives any right to require Lessor to apply payments in a certain manner and acknowledges that Lessor may apply payments received in the fashion most advantageous to the Lessor. Furthermore, Guarantor waives any and all claims against the Lessee, by subrogation or otherwise, until such time as Lessee's obligations to Lessor are fully and finally satisfied. This is a continuing guarantee and shall not be discharged, impaired or affected by death of the undersigned or the existence or nonexistence of the Lessee as a legal entity. This continuing Guarantee shall bind the heirs, administrators, representatives, successors, and assigns of undersigned and may be enforced by or for the benefit of any assignee or successor of Lessor.

The provisions of this Lease Guarantee shall extend to and apply to all the obligations of the Lessee under all lease agreements executed by Lessee for the benefit of Lessor, whether executed before or after the date of this guarantee, and whether set forth in separate lease agreements, schedules, applications, orders or collateral documents (all of which shall be referred to herein, both individually and collectively, as the 'Lease Agreement'). The execution of this Lease Guarantee shall not extinguish, release or waive any obligations, promises, or guarantees contained in any Lease Guarantee previously executed by Guarantor for the benefit of the Lessor. The undersigned agrees to pay a reasonable attorney's fee, and all other costs and expenses incurred by the Lessor or its successors or assigns in the enforcement of the Guarantee, whether or not a lawsuit is started.

The undersigned personal guarantor consents to Financial Pacific Leasing, LLC obtaining a consumer credit report on the undersigned for the purpose of evaluating the creditworthiness of the undersigned from time to time as may be needed in the credit evaluation and review process.

**Law Which Applies**
THIS AGREEMENT IS GOVERNED BY WASHINGTON LAW. GUARANTOR CONSENTS TO THE PERSONAL JURISDICTION OF THE COURTS OF THE STATE OF WASHINGTON AND AGREES NOT TO CLAIM THAT KING COUNTY, WASHINGTON IS AN INCONVENIENT PLACE FOR TRIAL. AT LESSOR'S SOLE OPTION, JURISDICTION AND VENUE (LOCATION) FOR ANY DISPUTE, SUIT OR ACTION ARISING UNDER OR IN RELATION TO THIS AGREEMENT, AND ALL DOCUMENTS EXECUTED IN CONNECTION THEREWITH, SHALL BE IN KING COUNTY, STATE OF WASHINGTON. GUARANTOR WAIVES THE RIGHT OF JURY TRIAL. LESSOR SHALL HAVE THE OPTION OF COMMENCING AN ACTION IN ANY COURT HAVING JURISDICTION OVER THE SUBJECT MATTER AND PARTIES TO THE TRANSACTION.

**Whole Agreement**
This Guarantee contains the entire understanding between Lessor and Guarantor.

| | |
|---|---|
| X _____ (No Title) | X _____ (No Title) |
| TIMOTHY J. SCHMIDT | STEVEN B. MUHLESTEIN |
| Date 4-17-07  Social Security # ▓▓▓ | Date 4-16-07  Social Security # ▓▓▓ |
| Home Phone ▓▓▓ | Home Phone # ▓▓▓ |
| X Janae H. Muhlestein (No Title) | X _____ (No Title) |
| JANAE H. MUHLESTEIN | |
| Date 4-16-07  Social Security # ▓▓▓ | Date _____  Social Security # _____ |
| Home Phone ▓▓▓ | Home Phone # _____ |

## DELIVERY AND ACCEPTANCE AUTHORIZATION

Lessee's signature authorizes Lessor to verify by phone with a representative of Lessee the date the Equipment was accepted by the Lessee; the Equipment description, including the serial numbers; the schedule of lease payments; that all necessary installation has been completed; that the Equipment has been examined by Lessee and is in good operating order and condition and is in all respects satisfactory to Lessee and that Equipment is accepted by Lessee for all purposes under the Lease. This information will be recorded on an Inspection/Verification Certificate, a copy of which will be forwarded to Lessee upon completion by Lessor. Lessee hereby authorizes Lessor to either insert or correct the Lessor and/or Vendor name(s), Equipment description, Equipment location and schedule of Lease payments. Lessee hereby authorizes Lessor to make payment to the Vendor upon completion of the Inspection/Verification Certificate.

LESSEE XTREMESTRUCTURES, INC.

X _____  President & Individually      Date 4/17/07
TIMOTHY J. SCHMIDT                 Title

# CERTIFIED COPY OF CORPORATE RESOLUTION FOR LEASING
## FROM AND OTHERWISE DEALING WITH
### INNOVATIVE LEASE SERVICES, INC.

The undersigned Secretary does hereby certify that they are the duly elected and qualified Secretary of

XTREMESTRUCTURES, INC. , a Florida

corporation; that the following is a true and correct copy of resolutions duly adopted by the Board of Directors of said corporation at a meeting of said Board of Directors convened and held in accordance with the By-Laws of said corporation on the 17th day of March, 2007, and that said resolutions are now in full force and effect.

Month       Year

RESOLVED that any one of the officers, employees, and agents (hereinafter referred to as "Officers") listed below are authorized to take the following actions in the name of and on behalf of this corporation.

1. To lease from INNOVATIVE LEASE SERVICES, INC. (Lessor) such equipment or other personal property on such terms as said Officers deem advisable and in the best interest of the corporation from time to time and the execution of any lease agreement by said Officers shall be conclusive evidence of their approval thereof.

2. To sign and deliver all leases and related documents, including any notes or other evidences of indebtedness as may be requested by the Lessor.

3. To pledge as collateral security for the performance of the obligations of the corporation to the Lessor, such assets of the corporation as may be required and agreed upon between the Officers and the Lessor.

RESOLVED FURTHER that, except as indicated above, each one of the Officers listed below is conferred with a general authority to deal on behalf of and in the name of this corporation with the Lessor.

RESOLVED FURTHER that the following are the true and correct signatures and designations of the Officers referred to above:

| NAMES | SIGNATURES | TITLES |
|---|---|---|
| TIMOTHY J. SCHMIDT | (X) | President |

RESOLVED FURTHER that this resolution shall continue in force until notice in writing of its revocation shall be given to and received by the Lessor at 3455 S. 344th Way, P.O. Box 4568, Federal Way, WA 98063, by certified mail, return receipt requested and notwithstanding the giving of such notice, this resolution shall be effective as to all agreements entered into prior to Lessor's receipt of such notice.

RESOLVED FURTHER that the secretary of the corporation be and hereby is authorized to furnish this certificate of authority to the Lessor and that a copy of this certificate shall be conclusive evidence of the authority of the Officers to deal with the Lessor on behalf of the corporation.

DATED this 17th day of April, 2007.

(X) _____, Secretary

Signed and sealed (if necessary) with seal of the corporation. *(Seal of Corporation not necessary for Washington Corporations.)*

FPCR 12/01

# EQUIPMENT LIST

**LEASE NO.:** 495476.001

| Quantity | Description |
|---|---|

**VENDOR:**  TIMECLOCK PLUS
BY DATA MANAGEMENT INC.
3322 WEST LOOP 306
SAN ANGELO, TX 76904

| Quantity | Description |
|---|---|
| 1 | TIMECLOCK PLUS PROFESSIONAL EDITION |
| 5 | PROFESSIONAL ED USER LICENSES |
| 20 | PROFESSIONAL ED EMPLOYEE LICENSES |
| 1 | PAYCHEX PREVIEW PAYROLL (EXPORT MODULE) |
| 1 | JOB COSTING MODULE |
| 1 | RT ETHEMET PIN PUNCH HANDSCANNER |
| 1 | RT ETHEMET PIN PUNCH |

Lessor:

**INNOVATIVE LEASE SERVICES, INC.**

By: _____
     Jan L. Jamison
Its:    President
Date: _____4/23/07_____

Lessee:

**XTREMESTRUCTURES, INC.**

By: X _____
     Timothy J. Schmidt
Its:    President
Date: _____04/17/07_____

# ADDENDUM TO LEASE

Lease No.: 495476.001

By execution hereof, the Lessee, XTREMESTRUCTURES, INC. consents to this Addendum to the above described lease and to making it a part thereof. Further, by execution hereof, the Lessee consents to the modification and changing of the VENDOR/SUPPLIER AND EQUIPMENT DESCRIPTION as presently contained in the Lease.

A FACSIMILE OF THIS AGREEMENT WITH SIGNATURE SHALL BE CONSIDERED TO BE AN ORIGINAL.

*Changes are described as follows:*

**The Vendor/ Supplier Shall Now Read:**

**ALAN TYE & ASSOCIATES, L.C.**
**9104 HORNER COURT**
**FAIRFAX, VA  22031**

**The Equipment Description Shall Now Read:**

**6     STERTIL KONI ST-1060-F MOBILE LIFTING COLUMNS**

All other terms and conditions of the Lease Agreement and Guarantee(s) remain in full force and effect.

Lessor: **INNOVATIVE LEASE SERVICES, INC.**

By: _____

Its: _____

Date: _____4/20/07_____

Lessee: **XTREMESTRUCTURES, INC.**

By: _____
TIMOTHY J. SCHMIDT

Its: President

Date: _____04/18/07_____

# ADDENDUM TO LEASE

By execution hereof, the Lessee, XTREMESTRUCTURES, INC. consents to this Addendum to the above described lease and to making it a part thereof. Further, by execution hereof, the Lessee consents to the modification and changing of the SCHEDULE OF LEASE PAYMENTS as presently contained in the Lease.

A FACSIMILE OF THIS AGREEMENT WITH SIGNATURE SHALL BE CONSIDERED TO BE AN ORIGINAL.

*Changes are described as follows:*

**The Schedule of Lease Payments Shall Now Read:**

**Lease Term=60 Months**

**Number of Prepayments =60**

**Rental $1960.42 + Tax Included= Total Payment $1,960.42**

**Number of Prepayments 2 + Administrative Fee $557.70 =**

**Initial Amount Due $4,478.54**

All other terms and conditions of the Lease Agreement and Guarantee(s) remain in full force and effect.

Lessor: **INNOVATIVE LEASE SERVICES, INC.**

By: _____

Its: _____President_____

Date: __4/23/07__

Lessee: **XTREMESTRUCTURES, INC.**

By: (x) _____
TIMOTHY J. SCHMIDT

Its: President

Date: (x) 04/18/07

# ADDENDUM TO LEASE

## PURCHASE AND JURISDICTION AGREEMENT

Lease No.: 495476.001

## 1. PURCHASE AGREEMENT

Upon termination of the above referenced lease, and provided Lessee is not in default under the terms of the lease:

Lessor agrees to sell, and Lessee hereby agrees to purchase the equipment described in the above referenced lease for a purchase price of _____ **$1.00** _____ plus any applicable taxes and other sums due under the lease. Lessor and Lessee agree to this modification to paragraph 17 of the Lease Agreement.

As stated in paragraph 3 of the Lease Agreement, Lessee agrees and acknowledges that it is the intent of both the Lessee and the Lessor that the above referenced lease qualify as both a true lease and a statutory finance lease and shall be governed by Article 2A of the Uniform Commercial Code. However, in the event the lease is determined to be other than a true lease and a statutory finance lease, then the Lessee shall be deemed to have granted to Lessor, a first priority security interest in the equipment described in the lease, including, without limitation, all fixtures and other property comprising the same, all software embedded therein, all attachments, accessories, additions, accessions, substitutions, and replacements relating thereto, accounts, chattel paper, security deposits and other collateral relating thereto, and any and all insurance and other proceeds of the foregoing.

## 2. JURISDICTION AGREEMENT

THIS LEASE IS MADE IN THE STATE OF WASHINGTON AND IS NOT VALID UNTIL ACCEPTED BY LESSOR IN FEDERAL WAY, WASHINGTON. EXCEPT AS TO LOCAL RECORDING STATUTES, THE PARTIES EXPRESSLY AGREE THAT THE LEASE, LEASE RATES, RENTAL RATES, FINANCE CHARGES, EACH GUARANTY, ALL DOCUMENTS EXECUTED IN CONNECTION WITH SAME, AND THE RIGHTS AND LIABILITIES OF THE PARTIES, SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF WASHINGTON. FURTHER, THE LESSEE AGREES THAT THE COURTS OF THE STATE OF WASHINGTON SHALL HAVE JURISDICTION OF ALL SUITS AND ACTIONS ARISING OUT OF THE LEASE, AND ALL DOCUMENTS EXECUTED IN CONNECTION THEREWITH, AND THAT VENUE OF ANY SUCH ACTION OR SUIT SHALL BE IN KING COUNTY, STATE OF WASHINGTON.

LESSOR SHALL HAVE THE OPTION OF COMMENCING AN ACTION IN ANY COURT HAVING JURISDICTION OVER THE SUBJECT MATTER AND PARTIES TO THE TRANSACTION.

A FACSIMILE OF THIS AGREEMENT WITH SIGNATURE SHALL BE CONSIDERED TO BE AN ORIGINAL.

LESSOR:                                          LESSEE:

INNOVATIVE LEASE SERVICES, INC.                  XTREMESTRUCTURES, INC.

BY: _____                      BY: _____
                                                     TIMOTHY J SCHMIDT

ITS: _____                     ITS: _____President & Individually_____

DATE: ____4/23/07____                            DATE: ____04/17/07____

# EQUIPMENT LIST

**LEASE NO.:**  495476.001  _____

| Quantity | Description |
|----------|-------------|

**VENDOR:**    ALAN TYE & ASSOCIATES, L.C.
               9104 HORNER COURT
               FAIRFAX, VA 22031


6          STERTIL KONI ST-1060-F MOBILE LIFTING COLUMNS

SN'S-- TW133414,
       SLAVE UNITS-  TW133415TW133422, TW133423, TW433424, TW4433425


Lessor:                              Lessee:

**INNOVATIVE LEASE SERVICES, INC.**    **XTREMESTRUCTURES, INC.**


By: _____      By: _____
    Jan L. Jamison                       Timothy J. Schmidt
Its:  President                      Its:  President

Date: __4/23/07_____            Date: __04/17/07_____

# ASSIGNMENT

For value received, INNOVATIVE LEASE SERVICES, INC. ("Assignor") hereby assigns and transfers to Financial Pacific Leasing, LLC and its successors and assigns ("Assignee") all of its rights under and respecting that certain Lease Agreement (the "Lease") dated _4/17    2007_, between Assignor, as Lessor, and XTREMESTRUCTURES, INC. as Lessee (the "Lessee").

1. Scope of Assignment.
Assignor assigns to Assignee all of its right, title and interest in and to the Lease and all addenda, including all rights to receive rental and other payments due and to become due, and all of Assignor's rights and remedies, thereunder. Assignor assigns all its rights and remedies under the lease and agrees that Assignee may, in its own or in Assignor's name, undertake any legal, equitable or other proceedings to enforce the Lessor's rights under the Lease. Assignor further assigns and transfers to Assignee all of its right, title and interest (a) with respect to the equipment described in the Lease (the "Equipment"), including the right, if any, to purchase the Equipment, and (b) any and all Guaranties of said Lease (each, a

2. Assignor Representations and Warranties. Assignor hereby represents and warrants to Assignee as follows:

   a) The Lease constitutes the entire agreement between Assignor and the Lessee concerning the subject matter thereof, has been duly authorized, executed and delivered by Assignor and the Lessee and is enforceable against each of them in accordance with its terms, subject to bankruptcy and similar laws. All signatures, names, addresses, amounts and other statements of fact contained herein and in the Lease and accompanying documents are true and correct.

   b) Lessee's obligation to pay rentals is not subject to any known dispute, set-off or counterclaim. Any Guaranty is enforceable against all guarantors thereunder in accordance with its terms, subject to bankruptcy and similar laws.

   c) Assignor owns the Lease and any Guaranty free and clear of all liens. Upon payment of the purchase price therefor to the supplier of the Equipment, the Equipment will be owned by Assignee free and clear of all liens other than those arising through Assignee. All of the Equipment has been irrevocably accepted by the Lessee in good condition.

   d) Assignor will comply with any warranties or other obligations extended by Assignor to Lessee.

   e) Lessee's obligation to pay rentals is not subject to any dispute, set-off or counterclaim. No default or event of default exists under the Lease. Except as may be acknowledged by the parties in writing, no rent or other amounts have been prepaid under the Lease. Except as specified in the Lease, Assignee has no collateral for Lessee's obligations thereunder.

   f) This transaction has not been "rebrokered", as the term is generally understood in the industry, unless Assignor has identified the transaction as being rebrokered and has indicated to Assignee the identity of any party from whom Assignor received the transaction. The term "rebrokered" includes all transactions with respect to which it is comtemplated that any remuneration will be paid by Assignor to parties other than Assignor's employees.

All representations and warranties herein shall survive the consummation of the transactions contemplated hereby. In the event that any such representations or warranties are not true, Assignor agrees on demand to pay Assignee an amount equal to the then-existing value of the remaining payments under the Lease, plus an amount equal to the expected value of the Equipment at the end of the Lease, less any unearned income, plus any then-outstanding unamortized expenses, plus any applicable taxes. Assignor further agrees to indemnify Assignee against and reimburse Assignee for any and all amounts, claims, losses, liabilities, judgements, costs, damages or expenses, including reasonable investigation and attorney fees, suffered, incurred or paid by Assignee, resulting from the breach of any of Assignor's representations, or warranties.

3. Assignor Obligations.
Assignee shall acquire none of the obligations of Assignor under the Lease, it being expressly understood and warranted by Assignor that all obligations on Lessor's part to be performed pursuant to the terms of the Lease have been performed by Assignor as of the date of this Agreement.

4. Scope of Assignor Liability.
Assignor shall not be liable to Assignee, except as provided above, for any breach by Lessee of Lessee's obligations under the Lease, including those for the payment of rent, and nothing contained in this Assignment shall be construed as an assumption by Assignor of the indebtedness of Lessee under the Lease.

5. Audit; Endorsement.

Assignor agrees that the Assignee may, upon reasonable notice, audit Assignor's books and records relating to the Lease, and may sign and endorse in Assignor's name any checks, drafts, money orders, notes, or other remittances received on account of said Lease.

6. Assignor Authority.

Assignor shall have no authority to, and will not accept collections, repossesses or consent to the return of the Equipment, or modify the terms of the Lease or cancel or terminate same without Assignee's express written consent.

7. Non-Waiver of Rights.

Assignee's knowledge now or hereafter of any breach or noncompliance with any of Assignor's representations, warranties or obligations shall not constitute a waiver by Assignee of any of its rights with respect to such breach or noncompliance.

8. Choice of Law; Venues and Jurisdiction; Attorney Fees.

This Assignment shall not be binding until such time as Assignee has executed the Assignment at its offices in the State of Washington. The Assignment shall be deemed by the parties to have been consummated in the State of Washington, and the Assignor consents and acknowledges that by reason of entering into this Assignment, it has entered into and done business in the State of Washington. In the event of legal action with regard to the terms of this Assignment, the parties hereto agree that any court of general jurisdiction in the State of Washington shall have jurisdiction over such controversy, and that venue in any such action may be laid in King County, Washington, in any court having subject matter jurisdiction. In the event of litigation involving this Assignment, the prevailing party in any such action shall be entitled to be awarded a reasonable attorney fee, at trial, on appeal and review.

9. Successors and Assigns.

This Assignment shall be binding upon and inure to the benefit of the parties hereto, their respective heirs, personal representatives, successors and assigns.

10. The parties agree to execute such further documents as may be necessary to comply with the terms of this agreement.

Dated this *23ed* day of *April* , *2007*.

ASSIGNOR:                                          ASSIGNEE:

INNOVATIVE LEASE SERVICES, INC.                    Financial Pacific Leasing, LLC
5931 PRIESTLY DRIVE, SUITE 205                     PO Box 4568
CARLSBAD, CA 92008                                 Federal Way, WA 98063

By: _____                      By: _____
Jan L. Jamison                                          Authorized Representative

This document is subject to a security interest in favor of Bank of America, as Administrative Agent for the Lenders.

| In re: TIMOTHY JOSEPH SCHNMIDT AND JANET LOUISE RUSTICI | CHAPTER: 7 |
|---|---|
| Debtor(s). | CASE NUMBER: 09-23892 |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
555 Marin Street, Suite 140
Thousand Oaks, CA 91360

A true and correct copy of the foregoing document described as <u>STIPULATION BETWEEN FINANCIAL PACIFIC LEASING LLC AND DEBTOR RE: RELIEF FROM STAY</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On <u>August 17, 2009</u> I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.
Debtors: Timothy Joseph Schmidt and Janet Louise Rustici - 2485 Notre Dane Blvd. #370 Chico, CA 95928; Douglas Jacobs, Esq., - 20 Independence Cir., Chico, CA 95973; Trustee, John Reger, Esq., - PO Box 933, Palo Cedro, CA 96073; Office of US Trustee - US Courthouse, 501 I St. Rm. 7-500, Sacramento, CA 95814

Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| <u>August 17, 2009</u>    Carol A. Kubesh | |
|---|---|
| Date                     Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-3.1**

F901331